UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
WESTERN DIVISION

| | |
|---|---|
| Terrance Williams )<br>)<br>    Plaintiff, )<br>)<br>v. )<br>)<br>Nancy A. Berryhill, Acting )<br>Commissioner of Social Security, )<br>)<br>    Defendant. ) | No. 17 CV 50112<br>Magistrate Judge Iain D. Johnston |

## MEMORANDUM OPINION AND ORDER

Plaintiff filed his present disability claim in March 2014, alleging that he was disabled starting in 2008 based on back pain and right-hand limitations.[1] Plaintiff raises two arguments for a remand. His first and primary argument is that the vocational expert gave a conclusory explanation as to why he could work three light-level jobs when his right, and dominant, hand was not fully functional. The Court finds that this first argument justifies a remand. This Court does not find that this argument requires the granting of benefits. *See Jensen v. Colvin*, 10 CV 50312, 2013 U.S. Dist. LEXIS 135452, *30-31 (N.D. Ill. Sept. 23, 2013) citing *Jones v. Shalala*, 10 F.3d 523, 526 (7th Cir. 1993) (possessing only one arm – even a non-dominant arm – does not make a person disabled).

### BACKGROUND

In 2012, plaintiff's right hand got caught in a machine at work, resulting in cuts to his fourth and fifth fingers. They eventually became infected and, despite two surgeries, were amputated "at the distal phalanx level." Dkt. #12 at 1.

---

[1] Plaintiff filed two earlier applications, one in 2008 and one in 2010, which were both denied by an administrative law judge. R. 21.

1

An administrative hearing was held in June 2016. Plaintiff testified that he had no feeling in his entire right hand, that it was "constantly numb," and that he had "to lick [his] fingers to try to get a little feeling from [his] thumb." R. 50. He testified that it took him "almost 30 minutes" to button his shirt on the morning of the hearing. *Id.*

The next witness was Dr. Gilberto Munoz. His testimony was brief, covering just over a page in the transcript. He opined that plaintiff did not meet any listing and that he could do light work with the restriction that he use his right arm only occasionally. Plaintiff's counsel was given the opportunity to cross-examine him, but chose not to ask any questions.

The last witness was James Radke, the vocational expert ("VE"). As plaintiff states, this appeal "largely revolves around" this testimony. Dkt. #12 at 3. The VE was questioned first by the ALJ and then by plaintiff's counsel.

The ALJ began by asking the VE to assume an individual who could do light work except that he could only, relevant to this appeal, "occasionally reach, handle, finger and feel with the right dominant hand." R. 59. The VE identified three available jobs for such an individual—laundry worker/sorter, cashier, and cleaner. As for the cashier job, the VE stated that, "owing to the upper extremity limitations, I am going to reduce [the amount of available jobs] by a full 80%," which left 360,000 jobs in the national economy. R. 60. The ALJ then asked whether the VE's conclusions were consistent with the *Dictionary of Occupational Titles* ("*DOT*"). The following exchange ensued:

> Q  What is the hand restriction for the general requirement for cashiers?
>
> A  Frequent hand usage and obviously he retains constant hand usage of the left hand. But I was assuming that he would be able to work in [the] evening and similar times where he might have less frequent customers and not have the speed demands that somebody might have at 5:00 in the afternoon.

2

>   Q  So it's your opinion that despite the requirement in the DOT for frequent usage bilaterally that 80% of the—that 20% of the jobs can be done with one hand that's—has constant usage?
>
>   A  Right. And the other with occasional. Correct. That's my opinion, Judge.
>
>   Q  And you base that on?
>
>   A  By that on personal experience.

R. 60-61. This line of questioning then ended here. One issue in this case is whether it ended prematurely. Should the ALJ here, or plaintiff's counsel later in cross-examination, have asked the VE to expound on his answer that his opinions were justified based on his "personal experience"?

The ALJ then asked a second hypothetical, which assumed the same right-hand limitation, but involved only sedentary work. The VE stated that plaintiff would be able to do the job of receptionist, of which there were 449,000 in the national economy.

The ALJ then turned the questioning over to plaintiff's counsel. She asked the VE about several issues in the following exchange, which is the critical one for this appeal:

>   ATTY:  Okay. Thank you. He did undergo an FCE which found that he should avoid firm grasping. If we add that limitation onto either hypothetical, would that change [] your responses? []
>
>   VE :   You know, I would consider reducing the cashier job another 10%, so another 36,000 jobs. But I would see no other reduction.
>
>   ATTY:  Okay. And—all right. Just one second. I'm looking at his FCE. Also if we add—this is another restriction from the FCE. Avoid fine coordination. How would that affect your responses to either hypothetical?
>
>   ALJ:   Is that also with the right hand?
>
>   ATTY:  I would assume this is with both hands.
>
>   ALJ:   Well, what's the impairment of the left hand? I mean he's not—
>
>   ATTY:  Well, I mean you're coordinating. Right? So you're—you can coordinate—I would assume that because of the limitations with using the right hand that it limits the ability to coordinate in using both hands together is my thought.

ALJ: Well, I can see that if you limit significantly the use of the right hand, operations that require bilateral hand coordination would be a problem. But I don't know any medical reason why the left hand would be affected in the ability to coordinate say with the fingers on the hand—

ATTY: Okay.

ALJ: —other than it's his nondominant hand and—

ATTY: I could agree with that. I mean I think—so I guess I'm asking avoid fine coordination

ALJ: Mr. Radke—

ATTY: —of the right hand and avoid fine coordination using—in using both hands in conjunction.

VE: Forgive me, Counselor. But I'd like you to just ask me that again so I get it together, all in one piece.

ATTY: Okay. Sure. [] So if he should avoid fine coordination in anything involving the right hand. So whether or not it's using the right hand on itself or using the right hand while working with the left hand. If there were—if it's tasks requiring use of both hands at the same time, then how would that affect the responses to both hypotheticals for the light and sedentary jobs?

A       I frankly don't believe that that reduces any of the numbers that I provided.

Q       So is it your opinion that these jobs do not require fine coordination then with the right hand?

A       Correct.

Q       So in terms of the cashier job and the laundry worker job, are you assuming that the individual would be handling I guess larger objects, medium to larger objects, or, you know, why would you rule out that there's fine coordination that's—why would you rule out fine coordination? To you, what would fine coordination involve?

A       Well, I think you just stated the elephant in the room here is that we haven't defined fine coordination. But I would generally think about that's what someone would do if they were in the jewelry or dental industries that they would be using fine coordination, to that extent, somebody was in electronic repair. And these jobs don't require that type of coordination. Separating laundry, for instance, and I'm—I believe that could be done primarily with the nondominant hand.

4

> Q       Is there some assumption here that in his nondominant hand that he has to—I don't know. Perhaps this isn't a fair question. But is there some assumption that he has to be able to use the left hand consistent with it being his dominant hand? That he has to be not clumsy in the use of the hand?
>
> A       Well, I think that's a fair question. Again I don't think I've provided you any jobs that have a great deal of upper extremity motor coordination demands. We're not asking him to be a painter with very fine motor control of the impaired hand. So I would say the jobs I've offered do not require that.

R. 62-65.

On September 8, 2016, the ALJ issued a 14-page decision finding plaintiff not disabled. In his briefs, plaintiff focuses solely on the VE's testimony at Step Five and thus skips over the ALJ's earlier analysis. But it is important to keep in mind that the ALJ concluded that plaintiff could do light work with the relevant limitation being that he could only "occasionally reach, handle, finger, and feel with the right dominant [hand]." R. 27. This finding assumed that plaintiff could use his right hand to a greater extent than he claimed he could. As the ALJ noted, plaintiff claimed that he had "no feeling" in his "entire" right hand and had difficulty doing even basic activities of self-care. *Id.* If these limitations had been accepted, then plaintiff would have been incapable of doing light work, which assumes that the right hand would be fully functional up to one-third of an 8-hour work day. But the ALJ found plaintiff's allegations were not entirely credible.[2] Plaintiff does not challenge this finding or the RFC formulation. However, in his briefs, he periodically frames the issue as an all-or-nothing choice between "bilateral versus unilateral hand usage." Dkt. #16 at 1. But the RFC formulation assumes, as noted above, that the right hand was functional for one-third of the work day, which means that there was some bilateral capability.

---

[2] The ALJ offered several rationales, including minimal clinical findings and examinations showing that plaintiff "had full range of motion in the right shoulder, upper arm, elbow, forearm, and hand." R. 28.

**DISCUSSION**

Plaintiff argues that the VE's testimony was flawed in numerous respects. The overall thrust of these arguments, if encapsulated in a neat little package, is that the VE's testimony was inherently unbelievable. *See* Dkt. #12 at 7 ("On its face, the [VE's] testimony is doubtful.").

Plaintiff complains that the VE "cited no research articles to back up his opinion," thus showing that his testimony "was simply based on his opinion." *Id.* at 8. Plaintiff also complains that the VE used "suspiciously simple math" in first reducing the cashier jobs by 80% and then later offering to reduce it another 10%. *Id.* These reductions were "suspiciously clean" according to plaintiff because the VE, for example, proposed a "10% reduction [] as opposed to 9.55%." Dkt. #16 at 2. Plaintiff apparently believes that the use of rounded percentages was a red flag indicating that the VE was pulling numbers out of his hat.

Another line of argument is that the ALJ supposedly failed to fulfill his duty to "resolve" and obtain a "reasonable explanation" for a conflict with the *DOT*. *See* SSR 00-4p. This argument has two parts. The first is establishing that there was a conflict in the first place. Plaintiff acknowledges that the DOT "is silent on bilateral versus unilateral hand use." Dkt. #16 at 1. However, relying on one district court case, plaintiff contends that "courts have *essentially* found that the DOT *presumes* bilateral upper extremity use." Dkt. #12 at 7 (emphasis added).[3] The second part of this argument is that the ALJ supposedly failed to resolve this latent conflict. Plaintiff concedes that the ALJ asked generally whether the VE's testimony conflicted with the *DOT* but asserts that "mere inquiry" was not enough because the conflict was never resolved. *Id.*

---

[3] The case is *Spriggs v. Colvin*, 2016 U.S. Dist. LEXIS 178708, *17-18 (S.D. Ill. Dec. 21, 2016).

Plaintiff's final criticism is that the ALJ failed to resolve the issue counsel raised in cross-examination, which was whether the VE was "presuming" that plaintiff "was able to use his non-dominant upper extremity as if it were the dominant upper extremity." *Id.* at 8.

In sorting through these arguments, the Court begins with the two major issues counsel raised in cross-examination, which can loosely be articulated as follows: (1) whether plaintiff truly could do these three jobs even though he did not have full bilateral dexterity; and, if so, (2) whether he could do them when his one "good" hand was his non-dominant hand. Plaintiff argues that the ALJ and VE did not resolve these issues.

To the extent that plaintiff is arguing that there was no attempt to resolve these issues, the Court disagrees with plaintiff's assertion. Both issues were a focal point of the hearing—at least with respect to the one job of cashier. First, the ALJ agreed that there was a conflict with the *DOT* when he asked the VE the following question: "So it's your opinion that *despite the requirement in the DOT for frequent usage bilaterally* that [] 20% of the jobs can be done with one hand [] ?" R. 60-61 (emphasis added). And the VE provided a "resolution," or answer, to this question when he opined that 20% of these jobs did not require full and frequent bilateral usage. What was his explanation for this conclusion? He stated that 20% of these jobs would allow plaintiff "to work in [the] evening and similar times where he might have less frequent customers and not have the speed demands that somebody might have at 5:00 in the afternoon." What was the evidence or authority supporting this conclusion? The VE answered that it was based on his "personal experience." Putting aside for the moment whether the latter answer is adequate or persuasive, the fact remains that the VE did offer *some* explanation and did acknowledge that there was a conflict with the *DOT*.

The same is true for plaintiff's argument about the possible clumsiness of the non-dominant left hand and whether it could do the bulk of the work. In the exchange quoted above, counsel asked

the VE about this issue. The VE, after acknowledging that this was a "fair question," opined that none of the three jobs required "a great deal of upper extremity motor coordination demands," stating that these jobs were not like "a painter with very fine motor control" but only involved manipulation of larger or medium objects. R. 64-65. Here again, the VE provided an explanation, even if might be called a conclusory one.

This leads us to the second level of analysis—namely, the adequacy or depth of the explanation. Plaintiff argues that the above explanations were so conclusory and rendered so casually to raise a concern whether they were, in the words of the Seventh Circuit, "conjured out of whole cloth." *Donahue v. Barnhart*, 279 F.3d 441, 446 (7th Cir. 2002). Although plaintiff is clearly suspicious about the reliability and supportability of the VE's explanations, plaintiff has not cited to any authority directly demonstrating that these explanations were, on their face, obviously wrong. Plaintiff is relying more on a gut-level judgment, asserting that "*it is not clear* how a cashier position would not require some fine motor control (e.g. picking up change, pushing buttons on the cash register)."[4] Dkt. #12 at 9 (emphasis added).

This Court agrees that the VE's explanations could be viewed as conclusory. But this agreement does not necessarily mean that the explanations were unreliable. It is possible that the VE could have provided a deeper explanation or cited to articles or otherwise provided a convincing explanation for how he reached his conclusions, but no one asked him to give that explanation at the hearing.

This brings us finally to the nub of this dispute and to the Government's main argument, not heretofore introduced. The Government argues that plaintiff forfeited these arguments because his

---

[4] This is one instance where plaintiff seems to be gliding over the ALJ's actual RFC finding, which as noted above assumes that plaintiff would be able to do, among other things, fingering with the right hand up to one-third of the time. At the hearing, counsel asked the VE about a proposed limitation for "firm grasping," but the ALJ did not include that precise limitation in the RFC.

counsel failed to raise them with the VE. The Government relies principally on two Seventh Circuit cases—*Barrett v. Barnhart*, 355 F.3d 1065, 1067 (7th Cir. 2004) ("because Barrett's lawyer did not question the basis for the vocational expert's testimony, *purely conclusional though that testimony was*, any objection to it is forfeited") (emphasis added) and *Donahue v. Barnhart*, 279 F.3d 441, 446 (7th Cir. 2002) ("the expert could have been cross-examined (Donahue was represented by counsel) about where these numbers came from, and why the expert's conclusion did not match the *Dictionary's*"). Plaintiff relies principally on a later Seventh Circuit case—*Overman v. Astrue*, 546 F.3d 456, 465 (7th Cir. 2008)—where no forfeiture was found. There, the Court stated as follows: "Unlike in *Donahue* and *Barrett*, Overman's counsel cross-examined the VE and elicited statements that seriously called into question the reliability of the VE's bottom-line conclusions."[5] *Id.* Plaintiff relies on the "seriously called into question" language and argues that no forfeiture should apply.

In this Court's view, these two lines of cases are in tension with each other. If this issue could be decided solely on policy grounds, the Court would find the Government's forfeiture argument to be persuasive. The questions counsel now raises (*e.g.* whether the VE relied on any research articles) could have been put directly to the VE.[6] Perhaps, as plaintiff implies, the VE would not have been able to answer them, thus making clear that he was winging it and had no reliable bases for his conclusions. However, it is also possible that the VE could have supplied an adequate explanation if asked. Plaintiff's counsel is experienced, having participated in many

---

[5] *See also Prochaska v. Barnhart*, 454 F.3d 731, 735 (7th Cir. 2006) ("Prochaska was not required to raise this issue at the hearing, because [SSR 00-4p] places the burden of making the necessary inquiry on the ALJ."); *McKinnie v. Barnhart*, 368 F.3d 907, 911 (7th Cir. 2004) ("[The VE] did not substantiate her findings with a written report or other documentation to substantiate her figures, and her vague responses to McKinnie's questioning were insufficient to establish a foundation for her testimony.").

[6] The Court notes that plaintiff has cited to no cases stating that a VE must rely on research articles. Further, SSR 00-4p states the following about what constitutes a "reasonable explanation" for a *DOT* conflict: "Information about a particular job's requirements or about occupations not listed in the DOT may be available in other reliable publications, information obtained directly from employers, *or from a VE's [] experience in job placement or career counseling*" (emphasis added).

9

disability hearings and having filed many appeals to this Court. She took the opportunity to vigorously cross-examine the VE on several issues, but then chose not to press further. In particular, she did not ask him to explain what he based his "personal opinion" on when he stated that 20% of the cashier jobs could be done by using the dominant hand only occasionally rather than frequently. The deeper concern is sandbagging. A disability litigant could get two bites at the apple, first raising initial objections at the hearing and then later, in this Court, coming up with a new round of criticisms. In this Court's opinion, that would be inefficient and unfair.

Nevertheless, in reviewing the Seventh Circuit cases cited by the parties, this Court is persuaded that *Overman*, the later case, provides enough support to justify plaintiff's call for a remand. In his opening brief, plaintiff cited to *Overman* in a footnote, anticipating that the Government would raise the forfeiture issue. However, in its response brief, the Government made no attempt to distinguish that case, or to provide the Court with a roadmap for how to reconcile these two lines of cases in a way favorable to its position. In sum, given that this is a close call, the Court concludes that further analysis of the nuances of the case law would not lead to any definitive answer and that the wisest course is to remand this case so that a vocational expert can provide clearer and more detailed explanation.

Plaintiff's second argument is that the ALJ failed to consider whether plaintiff's back problems "were consistent with Listing 1.04A." Dkt. #12 at 9. This argument was only one paragraph in the opening brief, and included no analysis of the many technical requirements of this listing. In his reply brief, plaintiff did not respond to the Government's specific arguments for why plaintiff cannot meet these requirements. As a result, this Court finds that this argument is undeveloped and therefore waived. *See Baker v. Colvin*, 2015 WL 719604, *4 (N.D. Ill. Feb.18,

10

2015) ("undeveloped" arguments, which rely on "passing references" to legal rules "without providing any substantive support," are deemed waived).

## CONCLUSION

For these reasons, plaintiff's motion for summary judgment is granted; the government's motion is denied; and this case is remanded to address the limited question of whether there are substantial jobs for the ALJ's previously-adopted RFC.

Date: October 1, 2018     By: _____
                              Iain D. Johnston
                              United States Magistrate Judge